IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

JUDY A. EWALD,

   Plaintiff,

vs.

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.

No. 05-CV-3010

ORDER

_____

  This case involves an application for disability benefits (SSD) under Title II of the Act, 42 U.S.C. §401 et seq. Plaintiff, Judy Ewald, (hereinafter "Ewald"), filed this action requesting reversal of the Commissioner's decision that she is not disabled. In the alternative, she asks this Court to remand to the Administrate Law Judge (hereinafter "ALJ") for further proceeding consistent with the applicable law. After careful consideration of the parties' written and oral arguments, the Court reverses the decision of the ALJ and awards benefits as of December 4, 1997.

## I.   INTRODUCTION

  Judy Ewald ("Ewald") applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.

§§ 401 et seq.  Tr. 55-57.  Ewald's alleged disability onset date is January 1, 1995.  Tr. 278.

Ewald's application was denied initially and on reconsideration.  Tr. 39-41, 44-46.  A hearing was held before an administrative law judge on October 2, 2003.  The ALJ determined that Ewald was not "disabled" within the meaning of the Social Security Act.  Tr. 26-27.  The Appeals Council denied request for review, therefore, the ALJ's decision stands as the final decision of the Commissioner.

## II.  BACKGROUND

Ewald was a 56 year-old woman when she applied for disability and 49-years old at her alleged onset date.  Tr. 55, 264.  Ewald has a high-school education.  Tr. 79.  Ewald alleges disability based on the following impairments: fibromyalgia[1], back problems, and arthritis.  Tr. 73.  Ewald

---

[1]Fibromyalgia is a chronic condition recognized by the American College of Rheumatology (ACR). It is inflammation of the fibrous and connective tissue, causing long-term but variable levels of muscle and joint pain, stiffness, and fatigue. Diagnosis is usually made after eliminating other conditions, as there are no confirming diagnostic tests. According to the ACR's 1990 standards, fibromyalgia is diagnosed based on widespread pain with tenderness in at least eleven of eighteen sites known as trigger points or tender points. Treatments for fibromyalgia include cold and heat
(continued...)

was last insured on December 31, 1997.

Ewald has worked as a telemarketer, deli clerk, nurses aide, cafeteria cook, and check out operator. Tr. 74. Ewald testified that in 1984 she had back surgery. Tr. 266. Ewald has a lengthy medical history of shoulder, knee, feet, hip and back pain. Tr. 203, 204, 223, 225, 226-28. On January 19, 1995, Ewald saw her family doctor, Dr. David G. Schweizer, who had been treating Ewald for various reasons "since at least 1988[,]" for complaints of "[a]ching all over." Tr. 201. Dr. Schweizer indicated that Ewald's symptoms "sound[] like fibromyalgia[,] but Premarin[2] and Ibuprofen don't seem to control the symptoms." Tr. 201. This was the first instance in which Ewald was given a clinical diagnosis of fibromyalgia. Id. Dr. Schweizer considered prescribing an antidepressant for the fibromyalgia. Id.

---

[1](...continued)
applications, massage, exercise, trigger-point injections, proper rest and diet, and medications such as muscle relaxants, antidepressants, and anti-inflammatories. See Jeffrey Larson, Fibromyalgia, in 2 The Gale Encyclopedia of Medicine 1326-27 (Jacqueline L. Longe et al. eds., 2d Ed. 2002).

[2] Used to prepare conjugated estrogen, i.e., steroid hormone produced mainly by the female ovaries. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1502 (30th ed. 2003).

Since this initial diagnosis, Dr. Schweizer has continuously diagnosed Ewald with fibromyalgia. Ewald was consistently going to the doctor for physical pain or soreness. For example, Dr. Schweizer noted "[o]steoarthritis in the spine", "hip and knee pain", and fibromyalgia, Tr. 199, 03/28/96; right hip discomfort and fibromyalgia, Tr. 198, 02/20/97; arm, hip and leg pain, difficulty laying on her right side, can't walk well, right and left knee difficulties, right hip problems, fibromyalgia, and arthritis, Tr. 197, 04/17/97; fibromyalgia, right hip pain, and right heel pain, Tr. 196, 11/25/97; knee pain, arthritis, right hip pain, "[s]everal episodes of problems with hip, back, and knee" and fibromyalgia, Tr. 196, 12/04/97.

On February 20, 1997, Ewald had X-rays which indicated "mild to moderate degenerative changes" in the lumbar spine and a bone spur on the ankle. Tr. 160. Ewald also suffers from recurrent ankle sprains, and she began seeing a podiatrist, Philip Morreale, D.P.M.. Tr. 180, 230-31. Ewald was given a steroid injection. Morreale indicated that Ewald probably has some ligament weakness or strain and has some continuous problems. Tr. 180. In December of 1997, Ewald

also began a physical therapy program for pain in her left knee. Tr. 153-55.

After Ewald's last insured date, i.e., December 31, 1997, she continued to have problems. On October 14, 1999, Dr. Schweizer discussed with Ewald her chronic back pain and arthritis; noted that her fibromyalgia and associated problems "make her disabled"; noted that Ewald "moves slowly and is obviously having some discomfort." Tr. 191.

Dr. Schweizer continued to diagnose Ewald with fibromyalgia: on 12/02/99, "[c]ontinue fibromyalgia treatment"; on 01/24/00, "[f]ibromyalgia pain poorly controlled arms and back"; on 02/24/00, "[f]ibromyalgia a little worse; on 06/05/00, "[f]ibromyalgia slightly worse"; on 04/15/02, "fibromyalgia symptoms...are out of control"; on 05/19/03, "[s]till having a lot of pain." Dr. Schweizer's fibromyalgia diagnosis was confirmed by Dr. R. Bruce Trimble, a rheumatologist[3], on May 11, 2001. Tr. 169-70.

On several occasions, Dr. Schweizer noted that Ewald did

---

[3] A specialist in rheumatic conditions, which is "a variety of disorders marked by inflammation, degeneration, or metabolic derangement of connective tissue structures of the body." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1627 (30th ed. 2003).

not want certain treatment or medication due to the expenses that were involved and her inability to pay in large part because of no insurance. <u>See</u> Tr. 187, 195, 197, 200.

On May 11, 2001, Ewald was seen by a specialist, Dr. R. Bruce Trimble, for her fibromyalgia. Tr. 166-70. This is the first time that Dr. Schweizer's fibromyalgia was confirmed by a specialist. Although this confirmation occurred after the date last insured, it is relevant to determine if Ewald had fibromyalgia all along.

## III.      <u>ADMINISTRATIVE LAW HEARING</u>

Ewald testified that due to her back surgery in 1984, she was given permanent work restrictions, i.e., could not lift more than two and a half to three pounds. Tr. 271. Ewald further stated that the doctor that placed these work restrictions on her had moved away, but that Dr. Schweizer continued this lifting restriction. Tr. 271-72.

Ewald stated that around 1995 through 1997 she was having trouble walking, swelling of the hands, knees, and feet, and could not get around like she used to. Tr. 272. Ewald testified that she is part of a proud family and did not apply for disability when the problems began in hopes that the

problems would get better.  Tr. 273.

Ewald stated that she could not attend an hour's long church group meeting because she would "have a lot of trouble with [her] knees and...hips and back and so [she] wouldn't be able to sit through the whole thing..." Tr. 274.  Ewald also stated that she has problems with her hands, her feet and shoulders.  Tr. 277.  Ewald testified that in most of her jobs, she would have people lift things for her as part of a "buddy system." Tr. 280-81.[4]

Ewald testified that the cost of doctor visits limited the number of times that she went to the doctor from 1995 through 1997.  Tr. 278.  Ewald also stated that she did not apply for disability back in 1995 when she was having all of this pain because she was hoping that the pain would get better and she has a "proud family" that does not ask for handouts.  Tr. 283.

Paul Ewald, Ewald's husband, testified that Ewald was not covered by his health insurance from 1995 through 1997.  Tr. 285.  Paul stated that he would have to pay Ewald's medical

---

[4]  The record shows that at the time of the hearing, October 2, 2003, the plaintiff was a mess, upset and crying. Tr. 269.

7

bills out of his pocket.  Tr. 288.  Paul testified that he has

taken over a lot of the household responsibilities for Ewald.

Tr. 285.

Next, a vocational expert ("VE"), Jeff Johnson, was

called to testify.  Tr. 239.  The ALJ's first hypothetical

question posed to the VE stated:

> the claimant had back surgery back in 1984,
> but we [sic] did return to work four months
> later.  She has various complaints of aches
> and pains, foot pain, knee pain, back pain,
> ankle pain, et cetera.  For the most part,
> the record shows some degenerated disc
> disease, which is not uncommon for an
> individual of her age.  There is basically
> no functional capacity assessment in the
> record for the relevant period here which
> is 1995 to 1997.  She does carry a
> diagnosis of fibromyalgia, but I do not
> really see any trigger point evaluation,
> all I see is the diagnosis.  Giving her the
> benefit of the doubt, and including her
> complaints of pain, and looking at Exhibit
> 9-F, page seven when she expressed to the
> doctor that she is ready to go back to work
> full-time, and Exhibit 9-F, page nine in
> August of 1992, where she indicated she was
> ready to go back to work for eight hours,
> it would appear that functionally, she
> would be able to occasionally lift twenty
> pounds[5], frequently lift ten pounds; sit,

---

[5] There was no real evidence that she could occasionally
lift twenty pounds.  It is true that the state agency medical
consultants put a check mark on their assessment, Tr. 233, but

(continued...)

> stand, and walk with normal breaks as she
> was doing at Kmart without any problem;
> occasional climbing, balancing, stooping,
> kneeling, crouching, and crawling, probably
> due to obesity than significant back
> problems; no manipulated, visual,
> communicative or environmental limitations.
> With those restrictions, Mr. Johnson, would
> the claimant be able to perform any work
> she's done in the past?

Tr. 290-91. The VE testified that the claimant could perform several of her past jobs with these limitations. Tr. 291.

Next, Ewald's attorney asked the VE a hypothetical question. Tr. 292. The attorney asked to re-examine Ewald. Ewald testified that in 1995, it was very hard for her to sit for any length of time; she could only sit for 45 minutes to an hour, Tr. 294, and that in her job she did not have to lift more than two and a half to three pounds. Tr. 294-95. The ALJ attempted to close the hearing before allowing the VE to answer Ewald's attorney's hypothetical question. Tr. 297. Ewald's attorney re-asked the VE the following hypothetical question:

---

[5](...continued)
they never saw her. The record is not clear that the medical consultants were aware that Ewald's height and weight gave her a body mass index of 39, when above 35 designates extreme obesity. <u>See</u> Plaintiff's Brief, Docket 12-1, at 8.

> if an individual were limited to standing
> forty-five minutes and then if an
> individual needed an hour's rest after
> that, and if an individual were limited to
> lifting two and a half pounds, and if an
> individual were in such severe pain they
> could not sustain a part-time job, at three
> to five a hours a day, would there be any
> jobs available?

Tr. 297. The VE stated that since there is no limitations on sitting, and since the VE cannot opine on pain, there are still jobs available. Tr. 298.

Ewald's attorney asked the VE if the previous hypothetical question also included the limitation of "could not sit for substantial periods in 1995, would there be any jobs available?" Tr. 298. The VE concluded that if the person could sit for forty-five minutes to an hour and then "get up and stretch, move about, and get back to the job, it could be performed." Tr. 298.

Ewald's attorney also asked if after sitting for forty-five minutes to an hour, there needed to be a one-hour resting period[6], or the person would need to miss three to five days a month due to significant pain, would there be any jobs

_____

[6] This is consistent with Dr. Schweizer's opinion. Tr. 246.

available?  Tr. 298-99.  The VE concluded that both restrictions would preclude competitive employment.  Tr. 299.

**IV.  ALJ'S DECISION**

The ALJ determined that Ewald has not "engaged in substantial gainful activity at any time pertinent to this decision."  Tr. 26.  Next, the ALJ determined that Ewald had the following "severe" impairments: "status post back surgery in 1984 with a return to work four months later; various complaints of aches and pain in the feet, knees, back, and ankles; degenerative disc disease; a diagnosis of fibromyalgia with no trigger point evaluation; and obesity," but these impairments or a combination of these impairments did not meet or equal the level of severity required under the social security listings.  <u>Id</u>.

The ALJ also concluded that the testimony of Ewald and her husband were both not credible.  <u>Id</u>.  The ALJ assigned the same residual functional capacity as used in the hypothetical question.  <u>See</u> <u>supra</u> p. 6-7.  The ALJ concluded that prior to December 31, 1997, Ewald was able to perform her past relevant work as a cook, a telephone solicitor, a cashier-checker, a sales clerk, and a child-care attendant.  Tr. 26.

The ALJ concluded that based on the "claimant's age, education, previous work experience, and residual functional capacity" that there were significant jobs in the national economy that Ewald could have performed. <u>Id</u>. at 27. Based on the foregoing, the ALJ concluded that Ewald was not disabled.

## IV. DISCUSSION

This Court must determine whether the Commissioner's decision to deny disability benefits is "supported by substantial evidence on the record as a whole." <u>Lorenzen v. Chater</u>, 71 F.3d 316, 318 (8th Cir. 1995).

### A. THE COURT'S JURISDICTIONAL BASIS

In <u>Bowen v. Yuckert</u>, 482 U.S. 137 (1987), the United States Supreme Court delineated the steps which precede a district court's review of a Social Security appeal:

> The initial disability determination is made by a state agency acting under the authority and supervision of the Secretary. 42 U.S.C. § 421(a), 1383b(a); 20 C.F.R. §§ 404.1503, 416.903 (1986). If the state agency denies the disability claim, the claimant may pursue a three-stage administrative review process. First, the determination is reconsidered de novo by the state agency. 20 C.F.R. §§ 404.909(a), 416.1409(a). Second, the claimant is entitled to a hearing before an administrative law judge (ALJ) within the Bureau of Hearings and Appeals of the

> Social Security Administration. 42 U.S.C.
> §§ 405(b)(1), 1383(c)(1) (1982 ed. and
> Supp. III); 20 C.F.R. §§ 404.929, 416.1429,
> 422.201 et seq. (1986). Third, the
> claimant may seek review by the Appeals
> Council. 20 C.F.R. §§ 404.967 et seq.,
> 416.1467 et seq. (1986). Once the claimant
> has exhausted these administrative
> remedies, he may seek review in federal
> district court. 42 U.S.C. §405(g).

<u>Yuckert</u>, 482 U.S. 137, 142, 107 S. Ct. 2287, 2291 96 L. Ed. 2d

119 (1987).

Section 1383(c)(3) of Title 42 of the United States Code

provides, "The final determination of the Secretary after a

hearing . . . shall be subject to judicial review as provided

in section 405(g) of this title. . . ."  In pertinent part, 42

U.S.C. § 405(g) provides:

> Any individual, after any final decision of
> the Commissioner of Social Security made
> after a hearing to which he was a party,
> irrespective of the amount in controversy,
> may obtain a review of such decision by a
> civil action . . .brought in the district
> court of the United States for the judicial
> district in which the plaintiff resides...
> The court shall have power to enter, upon
> the pleadings and transcript of the record,
> a judgment affirming, modifying, or
> reversing the decision of the Commissioner
> of Social Security, with or without
> remanding the cause for a rehearing. The
> findings of the Commissioner of Social
> Security as to any fact, if supported by
> substantial evidence, shall be conclusive

> . . . . The judgment of the court shall be
> final except that it shall be subject to
> review in the same manner as a judgment in
> other civil actions . . . .

Accordingly, this Court may affirm, reverse or remand the ALJ's decision.

### B. THE SUBSTANTIAL EVIDENCE STANDARD

The Eighth Circuit has made clear its standard of review in Social Security cases. If supported by substantial evidence in the record as a whole, the Secretary's findings are conclusive and must be affirmed. <u>Grissom v. Barnhart</u>, 416 F.3d 834, 837 (8th Cir. 2005); <u>Smith v. Shalala</u>, 31 F.3d 715, 717 (8th Cir. 1994) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); 42 U.S.C. § 405(g) (Supp. 1995)). "Substantial evidence 'is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" <u>Maresh v. Barnhart</u>, 438 F.3d 897, 898 (8th Cir. 2006) (quoting <u>McKinney v. Apfel</u>, 228 F.3d 860, 863 (8th Cir. 2000)). In the words of the Supreme Court, substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citing

<u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).

The Eighth Circuit has taken pains to emphasize that, "[a] notable difference exists between 'substantial evidence' and 'substantial evidence on the record as a whole.'" <u>Wilson v. Sullivan</u>, 886 F.2d 172, 175 (8th Cir. 1989) (quoting <u>Jackson v. Bowen</u>, 873 F.2d 1111, 1113 (8th Cir. 1989)).

> "Substantial evidence" is merely such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." "Substantial evidence on the record as a whole," however, requires a more scrutinizing analysis. In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory.

<u>Id</u>.

The Court, however, does "'not re-weigh the evidence or review the factual record de novo.'" <u>Roe v. Chater</u>, 92 F.3d 672, 675 (8th Cir. 1996) (quoting <u>Naber v. Shalala</u>, 22 F.3d 186, 188 (8th Cir. 1994)). Likewise, it is not this Court's task to review the evidence and make an independent decision. <u>Ostronski v. Chater</u>, 94 F.3d 413, 416 (8th Cir. 1996) (citing <u>Mapes v. Chater</u>, 82 F.3d 259, 262 (8th Cir. 1996)). "If,

15

after review, [it is] possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [this Court] must affirm the denial of benefits." <u>Id</u>. Even in the case where this Court "might have decided the case differently", this Court cannot reverse if there is substantial evidence to support the Commissioner's decision. <u>Fredrickson v. Barnhart</u>, 359 F.3d 972, 976 (8th Cir. 2004) (citing <u>Krogmeier v. Barnhart</u>, 294 F.3d 1019, 1022 (8th Cir. 2002)).

The process, however, is not stacked in the Commissioner's favor because, "[t]he standard requires a scrutinizing analysis, not merely a 'rubber stamp' of the [Commissioner]'s action." <u>Cooper v. Secretary</u>, 919 F.2d 1317, 1320 (8th Cir. 1990) (citing <u>Thomas v. Sullivan</u>, 876 F.2d 666, 669 (8th Cir. 1989)). In cases where the Commissioner's position is not supported by substantial evidence in the record as a whole, the Court must reverse. <u>See</u> <u>Lannie v. Shalala</u>, 51 F.3d 160, 164 (8th Cir. 1995). "'[T]he goals of the Secretary and the advocates should be the same: that deserving claimants who apply for benefits receive justice.'" <u>Battles v. Shalala</u>, 36 F.3d 43, 44 (8th Cir. 1994) (quoting

Sears v. Bowen, 840 F.2d 394, 402 (7th Cir. 1988)).

**C.   DETERMINATION OF DISABILITY**

Social Security disability benefits may be awarded to disabled individuals who meet certain income and resource guidelines.  42 U.S.C.A. § 423 (d)(1)(A).  In connection with the award of such benefits to an adult:

> [A]n individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C.A. § 423 (d)(1)(A).

An impairment will only be considered of such severity if the individual is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity which exists in the national economy. . . ."  42 U.S.C.A. § 423 (d)(2)(A).

Determination of a claimant's disability involves a five step analysis.  20 C.F.R. § 404.1520 (a-f).  In the first step, the ALJ determines if the Claimant had engaged in past substantial gainful activity.  Next, the ALJ decides if the

17

Claimant has an impairment.  Third, the ALJ must look at the
regulations to determine if the impairment meets or is
medically or functionally equal to a Listing in Appendix 1,
Subpart P of Regulation No. 4.  Fourth, the ALJ assesses the
Claimant's residual functional capacity (RFC), to see if the
Claimant could perform his past relevant work.  At the fifth
and final step of the analysis, the Social Security Commission
must prove that there are a significant number of jobs (other
than his past relevant work) in the national economy that a
person of the same age, education, past work experience, and
physical and mental residual functional capacity can perform.
20 C.F.R. § 404.1520 (f).

To acquire Social Security disability benefits, initially
the claimant has the burden of showing 'that she is unable to
perform her past relevant work.'"  Haley v. Massanari, 258
F.3d 742, 747 (8th Cir. 2001) (quoting Beckley v. Apfel, 152
F.3d 1056, 1059 (8th Cir. 1998)).  This encompasses the first
four steps of the analysis.  "If the claimant carries [her]
burden, 'the burden of proof then shifts to the Commissioner
to demonstrate that the claimant retains the physical residual
functional capacity to perform a significant number of other

jobs in the national economy that are consistent with the claimant's impairments and with vocational factors such as age, education, and work experience.'" Id. There must be some medical evidence to support the ALJ's determination of the claimant's residual functional capacity, and this evidence should address the claimant's ability to function in the workplace. Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam); Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

### D. REVIEW OF THE ALJ'S DECISION

"Deference to the ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence." Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005). By that same token, the ALJ's credibility determination should not just be stated as a conclusion in the guise of findings, but should be closely and affirmatively linked to substantial evidence. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

Additionally, the law in the Eighth Circuit is well settled that an ALJ may not discredit a claimant's subjective complaints of pain, discomfort, or other disabling limitations

simply because there is a *lack of objective evidence*.  <u>See</u>
<u>Ramirez v. Barnhart</u>, 292 F.3d 576, 581 (8th Cir. 2002) (noting
that the ALJ may not discredit a claimant solely because the
objective medical evidence does not fully support the
claimant's subjective complaints of pain).  Instead, the ALJ
may only discredit the subjective complaints if they are
inconsistent with the record as a whole.  <u>See</u> <u>Dixon v.</u>
<u>Barnhart</u>, 353 F.3d 602, 605 (8th Cir. 2003); <u>see also</u> <u>Bishop</u>
<u>v. Sullivan</u>, 900 F.2d 1259, 1262 (8th Cir. 1990) (citing
<u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984)).

Under <u>Polaski</u>, the ALJ must give full consideration to
all of the evidence presented relating to subjective
complaints, including the claimant's prior work record, and
observations by third parties and treating and examining
physicians relating to:  1) the claimant's daily activities;
2) the duration, frequency and intensity of the pain; 3)
precipitating and aggravating factors; 4) dosage,
effectiveness and side effects of medication; and 5)
functional restrictions.  <u>Polaski</u>, 739 F.2d at 1322.  When the
ALJ considers all of the <u>Polaski</u> factors and still makes a
determination to reject a claimant's subjective complaints,

the ALJ must give "good reasons" for discrediting the claimant's testimony. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001). If an ALJ discredits a claimant's testimony and gives good reasons for doing so, the ALJ's decision should normally receive deferential treatment. Id. (quoting Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990)).

The ALJ, in this case, inadequately explained vague inconsistencies that she relied upon to discredit Ewald's allegations of disabling pain. First, the ALJ thought that it was of importance that Ewald was able to perform household chores, yard-work, and travel. Tr. 24. In contrast, Ewald testified at the administrative hearing that she does not do all of her housework, nor lawn and garden work, nor walk regularly. Tr. 276.

There was also declarations from other third parties that indicated that Ewald's daily activities have been severely limited since her problems began. Tr. 126-27, 129-32, 148. For example, Deanna Alcott, a friend of Ewald's for over forty years, stated that she has noticed that it has become very difficult for Ewald to move, and that Ewald is very uncomfortable on a continuous basis. Tr. 126-27. The Eighth

Circuit has "consistently held that 'the ability to do activities such as light housework and visiting friends provides little or no support for the finding that a claimant can perform full-time competitive work.'" <u>Baker v. Barnhart</u>, 2006 WL 1596724, *13 (8th Cir. 2006) (citing <u>Hogg v. Shalala</u>, 45 F.3d 276, 278 (8th Cir. 1995).   Doing light housework is not equivalent to maintaining employment on a consistent, daily basis.

This Court is not persuaded by the ALJ's reasons that Ewald's allegations of pain are inconsistent with the record as a whole.   This Court is persuaded that there is not substantial evidence to support the ALJ's conclusion that Ewald's allegations of pain based on her daily activity are not credible.   For example, Ewald testified that she can't walk regularly anymore, cannot attend social functions due to pain, and has trouble buttoning a shirt or tying shoes.   Tr. 275-77.

Next, the ALJ concluded that the "objective medical evidence" supported a finding of non-disability.   Tr. 24.   The ALJ briefly summarizes Ewald's medical history.   Tr. 18-21. Surprisingly, the ALJ concluded that the opinion of Ewald's

treating physician, Dr. Schweizer, should be given "little weight" because it is inconsistent with the objective medical evidence and Dr. Schweizer's own treatment notes.  Tr. 21.

This Court is persuaded that the ALJ inaccurately characterizes the "objective medical evidence" and Dr. Schweizer's treatment notes.  On January 19, 1995, Dr. Schweizer first diagnosed Ewald with symptoms similar to fibromyalgia.  Tr. 201.  This is almost three years prior to her last insured date of December 31, 1997.  Dr. Schweizer never switched this diagnosis.  In fact, Dr. Schweizer saw Ewald several times over the next few years and continuously diagnosed her with fibromyalgia.  See e.g., Tr. 199 (March 28, 1996); Tr. 198 (February 20, 1997); Tr. 197 (April 17, 1997); Tr. 196 (November 25, 1997).  Dr. Schweizer continued to diagnose Ewald with fibromyalgia after Ewald's date of last insurance, i.e., December 31, 1997.  This is not surprising as its an ongoing disease.

Dr. Schweizer's opinion is further supported by Dr. Trimble's diagnosis of fibromyalgia in 2001.  Tr. 166-70.[7]

---

[7]    See supra note 3.  Dr. Trimble is a specialist in treating these conditions.

23

The Commissioner argues that Dr. Trimble's opinion is irrelevant because the opinion was given after the relevant time period, i.e., when Ewald was insured by the Social Security Administration, which was December 31, 1997.

With regards to retrospective medical diagnosis, the Eighth Circuit has stated:

> Retrospective medical diagnoses constitute relevant evidence concerning the degree of disability prior to expiration of the insured status. (Citation omitted). "Where the impairment onset date is critical, however, retrospective medical opinions alone will usually not suffice unless the claimed onset date is corroborated, as by subjective evidence from lay observers like family members."

List v. Apfel, 169 F.3d 1148, 1149 (8th Cir. 1999) (quoting Jones v. Chater, 65 F.3d 102, 104 (8th Cir. 1995). However, in the List case, the Eighth Circuit concluded that corroborating testimony from third party lay witnesses was not required due to the nature of the disease and there were other pre-insured medical records submitted indicating that List suffered from the disease.

As earlier mentioned, Ewald's treating physician, Dr. Schweizer, continuously diagnosed Ewald with fibromyalgia prior to her date last insured. Ewald continuously went to

the doctor about problems associated with her fibromyalgia. Ewald submitted declarations and presented testimony of several third party witnesses[8] indicating that Ewald suffered from this condition prior to her date last insured. This Court is persuaded that Dr. Trimble's medical diagnoses is relevant evidence as it is corroborated by previous medical evidence and the testimony and declarations of several third party witnesses.

This Court is persuaded that the objective medical evidence is consistent with Ewald's subjective allegations of disabling pain. This Court is also persuaded that the ALJ erred in assessing little weight to the opinion of Dr. Schweizer, Ewald's treating physician. Based on the objective medical evidence introduced by Ewald and the lack of inconsistent evidence as indicated by the ALJ, this Court is persuaded that substantial evidence does not support the ALJ's credibility determination on this point.

Instead of giving Ewald's treating physician the appropriate weight or assessing Dr. Trimble's retrospective diagnosis any weight, the ALJ inappropriately concluded that

---

[8] See supra p. 18.

the state agency medical consultants' opinion was more consistent with the medical record. Tr. 24. Based on the foregoing reasons, this Court is persuaded that the opinions of Dr. Schweizer and Dr. Trimble should have been given controlling weight, and the opinions of the state agency medical consultants should have been given less weight.

In reviewing the ALJ's opinion, the Court is convinced that the ALJ determined that a lot of Ewald's problems would have been resolved or less severe if Ewald was not obese. However, the Eighth Circuit has indicated that obesity is not necessarily a remediable condition and a problem that some people have no control over. See Stone v. Harris, 657 F.2d 210, 212 (8th Cir. 1981). Although some of the doctors recommended that Ewald exercise for her conditions, there is nothing in the record to show that Ewald refused to exercise. Ewald's own physical condition was not all that good, which might well limit exercise. For example, Ewald testified that she can't walk regularly anymore and she needs help putting on her shirt in the mornings. Tr. 276-77.

In any event, this Court is persuaded that the ALJ put too much emphasis on Ewald's obesity and inappropriately

inferred that Ewald's conditions could have been resolved if Ewald would not have willfully refused to exercise. This Court is persuaded that the medical evidence supports Ewald's allegations of disabling pain, and there is no evidence that Ewald was able to exercise and simply chose not to do so. "[A] claimant's obesity may be due to the effects of medication or inability to exercise due to pain." O'Donnell v. Barnhart, 318 F.3d 811, 819 (8th Cir. 2003) (citing Ludden v. Bowen, 888 F.2d 1246, 1249 (8th Cir. 1989).

This Court is cognizant that Ewald's work history is not as extensive as some other claimants, but is persuaded that the other factors overwhelming support her allegations of disabling pain.

This Court is persuaded that the record does not support the ALJ's credibility determination based on inconsistencies in Ewald's subjective allegations of pain and the record as a whole. As previously mentioned, Ewald continuously stated that she had swelling throughout her body, had trouble moving about, pain throughout her body, and could not work anymore. The objective medical evidence is consistent with all of Ewald's allegations of pain. Dr. Schweizer's diagnosis of

fibromyalgia is wholly consistent with Ewald's symptoms. Dr. Trimble confirmed Dr. Schweizer's diagnosis of fibromyalgia after Ewald was no longer insured through social security. Several times after Ewald's insured status expired, Dr. Schweizer indicated that Ewald's fibromyalgia disabled her, the same condition that she has had all along and before her insured status expired. There is nothing in Dr. Schweizer's reports, Dr. Trimble's examination, or the other medical evidence that is "inconsistent" with Ewald's allegations of disabling pain.

Ewald's allegations of disabling pain is also supported by the medical treatment that she received and the effects that medication has had on her fibromyalgia. As previously discussed, Ewald went to see the doctor numerous times for her problems associated with fibromyalgia. Although at times there is some time that elapsed between visits, the record is replete with doctor visits due to her medical condition, and there are a number of different possible reasons why Ewald may not have went to the doctor for some time. As previously noted, Ewald did not have insurance, did not have funds to continuously pay for these services, and was a proud

individual that did not easily ask for help.

Dr. Trimble stated that he was unsure as to how much benefit Ewald receives from amitriptyline[9]. Tr. 170. Dr. Schweizer noted that Premarin[10] and Ibuprofen do not seem to control her symptoms. Tr. 201. Ewald has attempted to try several prescription medicines to alleviate her pain. For example, on November 25, 1997, Dr. Schweizer noted that Ewald was not satisfied with Darvocet[11] and wants something that she can take as needed, and that the Ibuprofen does not seem to be helping. Tr. 197.

Again, Ewald's allegations of disabling pain are consistent with the number of times that she has seen a doctor for her condition, plus the number of times that she would have went if she could have afforded it, and the number of medications that have been unsuccessful at controlling her pain.

---

[9] Used in the treatment of chronic pain. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 62 (30th ed. 2003).

[10] See supra n. 2.

[11] Combination of propoxyphene napsylate, which is used to provide relief from mild to moderate pain, and acetaminophen. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 475, 1519 (30th ed. 2003).

Finally, the final two _Polaski_ factors are incorporated in the previous discussion. Basically any physical activity precipitates and aggravates Ewald's condition. Furthermore, for the same reasons, Ewald's functional limitations are severely limited due to her disabling condition.

When Ewald's subjective allegations of disabling pain are properly considered, the RFC determined by the ALJ is insufficient and does not provide substantial evidence. Since the hypothetical question posed to the vocational expert by the ALJ included this insufficient RFC, the experts response cannot constitute substantial evidence. _Cox v. Apfel_, 160 F.3d 1203, 1207 (8th Cir. 1998).

The Commissioner did not carry the burden of establishing that Ewald can perform jobs available in the economy. Ewald did establish that she is disabled. In response to Ewald's attorney's hypothetical question, the vocational expert concluded that there would be no jobs in the national economy if Ewald needed to rest for an hour after sitting in one place for forty-five minutes to an hour or that Ewald needed to miss three to five days a month due to pain.

**IV. CONCLUSION**

The Court has carefully considered the arguments of the parties and closely examined the record and is persuaded that there is not substantial evidence in the record as a whole to support the conclusion made by the ALJ.

The record clearly establishes that Ewald is disabled. Remanding this case for further proceedings would only delay Ewald's receipt of disability benefits (SSD), therefore, "an immediate order granting benefits without remand is appropriate." <u>Cline v. Sullivan</u>, 939 F.2d 560, 569 (8th Cir. 1991); <u>Tennant v. Schweiker</u>, 682 F.2d 707, 710 (8th Cir. 1982). Judgment shall be entered reversing the ALJ's decision of denying such benefits.

**Upon the foregoing,**

**IT IS HEREBY ORDERED** that the decision of the ALJ is reversed and the Commissioner is directed to compute and award disability benefits to Ewald with an onset date of December 4, 1997. This is the date that Dr. Schweizer indicated that the pain is "generally worse", Tr. 196, and this Court is persuaded that Ewald could no longer work due to her disability.

A timely application for attorney fees, pursuant to the

Equal Access to Justice Act, 28 U.S.C. §2412 ("EAJA"), must be filed within thirty days of the entry of final judgment in this action. Thus, if this decision is not appealed, and Ewald's attorney wishes to apply for EAJA fees, he must do so within 30 days of the entry of the final judgment based on the Order in this case.

**IT IS SO ORDERED** this 14th day of September, 2006.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa